# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| CINDY ZURAKOV, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> ALLIANCEONE RECEIVABLES MGMT, INC., <br><br> Defendant. | Case No.: 19-cv-1887 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Cindy Zurakov, f.k.a. Cindy Alexander, is an individual who resides in the Eastern District of Wisconsin (Washington County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff, a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt arose from a consumer transaction that included agreements to defer payment.

6. Defendant AllianceOne Receivables Management, Inc. ("AllianceOne") is a debt collection agency with its principal offices located at 4850 East Street Road, Suite 300, Trevose, Pennsylvania 19053.

7. AllianceOne is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. AllianceOne is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. AllianceOne is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

10. AllianceOne is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. On or about July 9, 2019, AllianceOne mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Credit First, N.A." ("Credit First"). A copy of this letter is attached to this Complaint as Exhibit A.

12. Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of a credit card, used only for personal, family, or household purposes.

13. Upon information and belief, Credit First charged-off the alleged credit card account referenced in Exhibit A sometime prior to July 9, 2019. At or before the time Credit First charged-off the account, Credit First ceased mailing monthly account statements and ceased adding interest and fees to the account.

14. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

2

15. Upon information and belief, <u>Exhibit A</u> is a form debt collection letter used by AllianceOne to attempt to collect alleged debts.

16. Upon information and belief, <u>Exhibit A</u> is the first written communication AllianceOne mailed to Plaintiff regarding the alleged debt referenced in <u>Exhibit A</u>.

17. <u>Exhibit A</u> includes the following representation which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. Upon your written request within the thirty-day period, this office will provide you with the name and address of the original creditor, if different from the current creditor.

18. <u>Exhibit A</u> also includes the following representation:

> As of the date of this letter, you owe $861.38. Because of interest, the balance owing on the day you pay may be different. Please contact our office if you have questions about interest.

19. <u>Exhibit A</u> thus states that, as of July 9, 2019, Plaintiff's alleged debt had a balance of $861.38, but that because of interest, the amount owed was subject to increase and may be greater on the day the debt was paid.

20. On or about September 19, 2019, AllianceOne mailed a debt collection letter to Plaintiff regarding the same alleged debt owed to Credit First. A copy of this letter is attached to this Complaint as <u>Exhibit B.</u>

21. Upon information and belief, <u>Exhibit B</u> is another form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

22. Upon information and belief, <u>Exhibit B</u> is another form debt collection letter used by AllianceOne to attempt to collect alleged debts.

23. <u>Exhibit B</u> includes the following representation:

3

> As of the date of this letter, you owe $861.38. Because of interest, the balance owing on the day you pay may be different. Please contact our office if you have questions about interest.

24. <u>Exhibits A & B</u> falsely tell the consumer that the balance of the consumer's account may increase due to interest.

25. When Credit First charged off Plaintiff's account, Credit First stopped mailing Plaintiff account statements.

26. When a creditor stops mailing periodic account statements at the time of charge-off, the creditor waives its right to collect interest and fees with respect to the account:

> Following Harrell's default on her agreement with Citibank, it charged-off Harrell's account and stopped adding interest to Harrell's account, as required by federal law. *See* 12 C.F.R. § 226.5(b)(2)(i) ("A periodic statement need not be sent for an account … if the creditor has charged off the account in accordance with loan-loss provision and will not charge any additional fees or interest on the account …").
>
> Thus, at the point Citibank charged-off Harrell's account, it waived its right to collect the agreed-to interest on the account. (A waiver is "a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon." *Greathouse v. Shreve*, 891 S.W.2d 387, 390, 42 01 Ky. L. Summary 19 (Ky. 1995).) Therefore, Citibank had neither a statutory nor a contractual right to collect interest when it sold and assigned Harrell's debt to Unifund.

*Unifund CCR Partners v. Harrell*, 509 S.W.3d 25, 29 (Ky. 2017) (footnotes omitted).

27. When Credit First charged off Plaintiff's account and stopped mailing Plaintiff account statements, Credit First waived its right to collect interest on Plaintiff's account.

28. <u>Exhibits A & B</u> state the balance of Plaintiff's alleged debt is $861.38, despite being sent over two months apart.

29. Upon information and belief, AllianceOne does not add any interest to accounts such as Plaintiff's in the ordinary course of business.

30. Upon information and belief, Credit First does not add any interest to accounts such as Plaintiff's in the ordinary course of business.

4

31. Upon information and belief, Credit First does not direct Alliance One to add any interest to accounts such as Plaintiff's in the ordinary course of business.

32. Upon information and belief, AllianceOne cannot add any interest to Plaintiff's account.

33. Credit First has waived future interest by charging off the account and ceasing sending monthly statements. 12 C.F.R. § 226.5(b)(2)(i).

34. The statement in Exhibits A & B, that "because of interest, the balance owing on the day you pay may be different," is a materially false, deceptive, and misleading representation that the creditor, or the debt collector could, and would, attempt to collect these charges. *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 367 (7th Cir. 2018).

35. Exhibit B also includes the following settlement offer:

> At this time, we would like to offer to resolve your account for 40% off the balance! That's a reduced payment amount of $516.83.

36. Exhibit B states the purported settlement offer is "for 40% off the balance."

37. Just below that, however, Exhibit B states:

> As of the date of this letter, you owe $861.38. Because of interest, the balance owing on the day you pay may be different. Please contact our office if you have questions about interest.

38. Exhibit B implies that the amount of money necessary to settle the alleged debt changes and may not be the amount stated in the letter.

39. However, in reality, either the settlement offer is for the set, pre-determined amount of $516.83 or it is not. It either varies or it does not.

40. The unsophisticated consumer could not determine from Exhibit B if the settlement offer is for a set amount or a possibly variable amount.

5

41. The normal meaning of "settling" a debt means that the debt is permanently resolved in exchange for a payment of a portion of the balance.

42. The consumer could send a check for $516.83 and would not know whether she had sent enough money to actually settle the account, due to the possibility that AllianceOne or Credit First had added interest or other charges to the settlement amount. *E.g., Nichols v. Northland Groups, Inc.*, Nos. 05-c-2701, 05-c-5523, 06-c-0043, 2006 U.S. Dist. LEXIS 15037, at * (N.D. Ill. Mar. 31, 2006) ("Requiring a clear statement of the settlement proposal, including the method by which the settlement amount is calculated, will not interfere with the debt collector's freedom to negotiate.").

43. The consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt. A payment of the entire debt would leave pennies or, at most, a few dollars left over for payment later. *See e.g., Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). Due to a few remaining dollars or cents of interest, however, GCS could continue to collect the entire remaining balance of the alleged debt.

44. Plaintiff was confused and misled by <u>Exhibits A & B</u>.

45. The unsophisticated consumer would be confused and misled by <u>Exhibits A & B</u>.

### ***The FDCPA***

46. The FDCPA creates substantive rights for consumers; certain violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'")

6

(quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after Spokeo, have rejected similar challenges to standing in FDCPA cases.") (citing *Hayes v. Convergent Healthcare Recoveries, Inc., 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes … do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016)

7

("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

47. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

48. Misrepresentations of substantive information about the debt collector or the debt, including the debt collector's licensing status in Wisconsin, injures or risks injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Encore Receivable Management, Inc.*, 18-cv-1484-WED, 2019 U.S. Dist. LEXIS 134377 (E.D. Wis. Aug. 9. 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations

8

omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

49. 15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

50. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of---the character, amount, or legal status of any debt."

51. 15 U.S.C. § 1692e(5) specifically prohibits "The threat to take any action that cannot legally be taken or that is not intended to be taken."

52. 15 U.S.C. § 1692e(10) specifically prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt."

53. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

54. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

55. 15 U.S.C. § 1692g(a) provides that:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> (1) the amount of the debt;

9

56. 15 U.S.C. § 1692g(b) states, in part, that "collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

### *The WCA*

57. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

58. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

59. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

60. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

61. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

62. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

63. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

64. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

65. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct … in such a manner as can reasonably be expected to threaten or harass the customer."

66. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

67. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

11

68. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

69. Although the FDCPA does not authorize injunctive or declaratory relief, *see Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 507 n.3 (D. Md. Mar. 11, 2013), these forms of relief are available under the WCA. Wis. Stat. §§ 426.109(1); 426.110(4)(e); 426.110(6)(b).

70. The WCA expressly authorizes individual actions to enjoin "any person who in . . . enforcing consumer credit transactions engages in … False, misleading, deceptive, or unconscionable conduct in enforcing debts … arising from consumer credit transactions." Wis. Stat. § 426.110(2)(c); *see* Wis. Stat. § 426.110(3).

71. The WCA also authorizes "any customer affected by a violation of chs. 421 to 427 and 429 … or by a violation of the federal consumer credit protection act … [to] bring a civil action on behalf of all persons similarly situated, for actual damages by reason of such conduct or violation, together with penalties as provided in sub. (14), reasonable attorney fees and other relief to which such persons are entitled under chs. 421 to 427 and 429." Wis. Stat. § 426.110(1).

72. The WCA authorizes customers to bring class actions for injunctive relief to cure violations of Wis. Stat. § 427.104(1).

## COUNT I – FDCPA

73. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

74. By stating "because of interest, the balance owing on the day you pay may be different," Exhibits A & B make representations which are false, deceptive, and misleading as to the character, amount, and legal status of Plaintiff's alleged debt.

75. Exhibits A & B falsely threaten to impose interest on the debt, which was charged off and static at the time Exhibits A & B were mailed.

76. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), 1692f, 1692f(1), 1692g(a)(1), 1692g(b).

## COUNT II – WCA

77. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

78. By stating "because of interest, the balance owing on the day you pay may be different," Exhibits A & B make representations which are false, deceptive, and misleading as to the character, amount, and legal status of Plaintiff's alleged debt.

79. Exhibits A & B falsely threaten to impose interest on the debt, which was charged off and static at the time Exhibits A & B were mailed.

80. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT III – FDCPA

81. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

82. By offering a "reduced payment amount" which is "for 40% off the balance" while simultaneously indicating that the balance is subject to change, Exhibit B includes representations

13

which are false, deceptive, and misleading as to the character, amount, and legal status of Plaintiff's alleged debt.

83. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), and 1692e(10).

## **CLASS ALLEGATIONS**

84. Plaintiff brings this action on behalf of a Class, consisting of: (a) all natural persons in the State of Wisconsin (b) to whom Defendant AllianceOne sent a collection letter in the form of Exhibit A and Exhibit B to the complaint in this action, (c) while attempting to collect a debt owed to "Credit First N.A.," which was incurred for personal, family, or household purposes, (d) where the collection letter was mailed between December 23, 2018 and December 23, 2019, inclusive, (e) and was not returned by the postal service.

85. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

86. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A and/or B violate the FDCPA and/or the WCA.

87. Plaintiff's claims are typical of the claims of the members of the Class. All are based on the same factual and legal theories.

88. Plaintiff will fairly and adequately represent the interests of the members of the Class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

89. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

90. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) declaratory relief;

(b) injunctive relief;

(c) actual damages;

(d) statutory damages;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: December 23, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN (1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com